# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JHL PHARMACEUTICALS, LLC, f/k/a BLU PHARMACEUTICALS, LLC, and BLU CARIBE, INC., | : : : : : |
| Plaintiffs/Counterclaim Defendants, | : : |
| v. | : C.A. No. 1-18-cv-00553-MN : |
| PURACAP LABORATORIES, LLC, and CARIBE HOLDINGS (CAYMAN) CO., LTD., | : : : : |
| Defendants/Counterclaimants. | : : |

## DEFENDANTS'/COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTIONS

Defendant/Counterclaimants PuraCap Laboratories, LLC and Caribe Holdings (Cayman) Co., Ltd. hereby submit the following proposed Jury Instructions to accompany the Joint Instructions filed contemporaneously herewith.

# TABLE OF CONTENTS

**PRELIMINARY INSTRUCTION** ..................................................................................................1

**Description of Case: Summary of Applicable Law**......................................................................1

**FINAL INSTRUCTIONS**............................................................................................................3

**Breach of Contract**......................................................................................................................3

**Damages – Breach of Contract - General** ..................................................................................5

**Reliance by the PuraCap Parties**................................................................................................6

**Recklessness and Intentional Misrepresentation** ......................................................................8

**Prompt Notice**..............................................................................................................................9

## PRELIMINARY INSTRUCTION

### Description of Case: Summary of Applicable Law

This case is about a business dispute arising from a sale of business assets. Two companies, Blu Pharmaceutical and Blu Caribe, which I will refer to together as the "Blu Parties," sold substantially all of their assets to two other companies, PuraCap Labs and PuraCap Caribe, which I will refer to together as the "PuraCap Parties." The Blu Parties and the PuraCap Parties are the parties to this lawsuit. Together, I will call them the "Parties".

In this case, the PuraCap Parties claim that the Blu Parties breached representations and warranties that the Blu Parties made in the Parties' Purchase Agreement about the condition of property that they were selling to the PuraCap Parties. The PuraCap Parties also claim that the Blu Parties breached the Purchase Agreement by failing to pay certain vendor invoices. As a result of these alleged breaches, the PuraCap Parties claim that they are entitled to recover from the Blu Parties monetary compensation from the Blu Parties as set forth in the Purchase Agreement. The Blu Parties deny these claims and contend that money held in escrow at the time of Closing should be released to them.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements that each of the Parties must prove to make its case:

In order to prove a breach of contract, a party must establish: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages. The PuraCap Parties claim that the Blu Parties breached the Purchase Agreement by misrepresenting the condition of the assets sold

136366.00603/125535550v.1

and by failing to pay invoices for work performed before Closing by vendors that the Blu Parties had hired.

Here, in order to recover, the PuraCap Parties must establish that the Blu Parties made representations and warranties about the condition of assets that the PuraCap Parties purchased; that the Blu Parties breached those representations and warranties; and that those breaches caused the PuraCap Parties to suffer damages.

In order to recover for the Blu Parties' alleged failure to pay vendors, the PuraCap Parties must establish that the Blu Parties had an obligation under the contract to pay such vendor invoices, that they failed to do so, and that those breaches caused the PuraCap Parties to suffer damages.

Source:   MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE THIRD CIRCUIT, 1.2, Preliminary Instructions – Description of Case; Summary of Applicable Law (2017) (modified).

# **FINAL INSTRUCTIONS**

## **Breach of Contract**

The Puracap Parties and the Blu Parties were parties to the Purchase Agreement and the Escrow Agreement. The PuraCap Parties claim that the Blu Parties breached the Purchase Agreement and that the PuraCap Parties were damaged as a result.

To succeed on a claim for breach of contract, a party must establish: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages. The PuraCap Parties claim that the Blu Parties breached the Purchase Agreement in two ways.

First, the PuraCap Parties claim that the Blu Parties breached the following representations about the condition of the property that the PuraCap Parties purchased.

- Section 4.6.4. Except as set forth in <u>Section 4.6.4 of Sellers Disclosure Schedule</u>, all Tangible Property of the Business, wherever located, (a) is in good condition, ordinary wear and tear excepted, (b) is structurally sound and free of any defect and deficiency, (c) complies in all respects with, and is being operated and otherwise used in full compliance with, all applicable Laws, and (d) is sufficient for Sellers' operations and Business as presently conducted.

- Section 4.18.2. Except as set forth on <u>Section 4.18.2 of Sellers Disclosure Schedule</u>, the Owned Real Property and all appurtenances and improvements, as used, constructed or maintained by Sellers at any time, conform to applicable Law in all material respects, and except as described in <u>Section 4.18.2 of Sellers Disclosure Schedule</u>, Sellers have not received notice of violation of any applicable Laws with respect to the Owned Real Property. Without limiting the foregoing, the Owned Real Property, taken as a whole, is in substantially good and sufficient condition for the operation of the Business in the manner currently conducted by Sellers (ordinary wear and tear excepted). No condemnation, eminent domain or similar proceeding is pending or, to the Knowledge of Sellers, threatened with respect to all or any portion of the Owned Real Property. Sellers have received no written notice from their insurance carriers, lenders or from any Governmental Body that any repairs, replacements or alterations are required to be made to the Owned Real Property which have not been made.

- Section 4.18.10 Except as set forth on <u>Section 4.18.10 of Sellers Disclosure Schedule</u>, to Sellers' Knowledge, the heating, ventilation, air-conditioning, electrical, plumbing, water, fire alarm and structural systems and components of the Owned Real Property are in good working order and condition or are in compliance with applicable Law.

DEFENDANTS 3

The Purchase Agreement also provided that the Blu Parties would indemnify and hold the PuraCap Parties harmless for any misrepresentation, breach, or failure of any warranty or representation the Blu Parties made pursuant to section 10.1.1 of the Purchase Agreement.

The Parties agree that the Blu Parties owed the PuraCap Parties these obligations. Therefore, to succeed on this claim for breach of contract, the PuraCap parties must establish, first: that the Blu Parties breached their obligation to indemnify and hold the PuraCap Parties harmless for any misrepresentation, breach, or failure of any warranty or representation the Blu Parties made pursuant to the Purchase Agreement; and second, that the PuraCap Parties were injured as a result.

Second, the Parties agree that under section 2.2. of the Purchase Agreement, the PuraCap Parties would not "in any manner assume or be liable or responsible for any Obligations of Sellers other than the Specified Liabilities. All Obligations of Sellers other than the Specified Liabilities shall remain the sole responsibility of Sellers, and Sellers shall pay and discharge such Obligations in full as the same become due."

Therefore, for the PuraCap Parties to establish that the Blu Parties are liable to them for failure to pay vendor invoices, they must prove: first, that the Blu Parties breached their obligation to pay and discharge obligations that were their responsibility; and second, that the PuraCap Parties were damaged as a result.

Source: DELAWARE PATTERN JURY INSTRUCTIONS 19.20, Breach of Contract Defined (2006) (modified); Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513, 548 (Del. Super. Ct.), aff'd, 886 A.2d 1278 (Del. 2005) (identifying elements of breach of contract)

**<u>Damages – Breach of Contract - General</u>**

If you find that one party committed a breach of contract, the other party is entitled to compensation in an amount that will place it in the same position it would have been if the contract had been properly performed. The measure of damages is the loss actually sustained as a result of the breach of the contract.[1]

---

[1] Source: DELAWARE PATTERN JURY INSTRUCTIONS 22.24, Measure of Damages – Breach of Contract (2006).

## **Reliance by the PuraCap Parties**

The Parties' Purchase Agreement included the Blu Parties' representations and warranties concerning the condition of Plaintiffs' tangible property and real property, including the heating, ventilation, air-conditioning, electrical, plumbing, water, fire alarm and structural systems and components.

In Section 12.6 of the Purchase Agreement, the Parties agreed that:

> "Notwithstanding the right of Buyers to investigate the Sellers and Owner, Purchased Assets, financial condition of the Sellers and otherwise, and notwithstanding any knowledge obtained or obtainable by Buyers as a result of such investigation, Buyers have the unqualified right to rely upon, and have relied upon, each of the representations and warranties made by Sellers and Owner in this Agreement or pursuant hereto (which are bargained for assurances)."

Accordingly, under this provision, the PuraCap Parties had the unqualified right to rely on the Blu Parties' representations and warranties regarding the condition of the assets. In determining whether the Blu Parties breached their representations and warranties, you therefore shall not take into account whether the PuraCap Parties knew or could have known about or investigated the condition of the assets that were sold. That is not relevant to the issue of whether the Blu Parties breached the Purchase Agreement.

Source: Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513, 548 (Del. Super. Ct.), aff'd, 886 A.2d 1278 (Del. 2005) ("the extent or quality of plaintiffs' due diligence is not relevant to the determination of whether [seller] breached its representations and warranties in the Agreement. To the extent [seller] warranted a fact or circumstance to be true in the Agreement, plaintiffs were entitled to rely upon the accuracy of the representation irregardless of what their due diligence may have or should have revealed. In this regard, [seller] accepted the risk of loss to the full extent of its indemnification commitments in the event its covenants were breached."); Cobalt Operating, LLC v. James Crystal Enters., LLC, 2007 WL 2142926, at *28 (Del. Ch.

July 20, 2007), aff'd without op., 945 A.2d 594 (Del. 2008) ("Having contractually promised [the buyer] that it could rely on certain representations, [the seller] is in no position to contend that [the buyer] was unreasonable in relying on [the seller's] own binding words."); Akorn, Inc. v. Fresenius Kabi AG, No. CV 2018-0300-JTL, 2018 WL 4719347, at *79 (Del. Ch. Oct. 1, 2018), aff'd, 198 A.3d 724 (Del. 2018) (same); Gloucester Holding Corp. v. U.S. Tape & Sticky Prod., LLC, 832 A.2d 116, 127–28 (Del. Ch. 2003) (in claim for indemnification based on breach of representations and warranties, it was irrelevant whether reliance on those representations was justified).

## Recklessness and Intentional Misrepresentation

Under provisions of the Purchase Agreement, for the PuraCap Parties to recover damages, the total of all of their damages claims must be at least $240,000. The PuraCap Parties cannot recover more than $2,400,000, <u>unless</u> you find that the Blu Parties either acted recklessly or made any intentional misrepresentation.

Reckless conduct reflects a knowing disregard of a substantial and unjustifiable risk. It amounts to an "I don't care" attitude. Recklessness occurs when a person, with no intent to cause harm, performs an act so unreasonable and so dangerous that he or she knows, or should know, that harm will probably result.

<u>Source</u>: DEL. P.J.I. CIV. § 5.9 (2000) (Reckless Conduct Defined).

In order to prove an intentional misrepresentation, the PuraCap Parties must establish that the Blu Parties: (1) deliberately concealed a material past or present fact, or were silent in the face of a duty to speak; (2) acted with knowledge of their wrongdoing; (3) intended to induce the PuraCap Parties' reliance upon the concealment; (4) caused the PuraCap Parties to rely upon the concealment; and (5) caused damages to the PuraCap Parties as a result of the concealment.

<u>Source</u>: <u>Duffield Assocs. v. Meridian Architects & Eng'rs, LLC</u>, 2010 Del. Super. LEXIS 293, *14 (defining the elements of intentional misrepresentation as "(1) deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) that defendant acted with scienter; (3) an intent to induce plaintiff's reliance upon the concealment; (4) causation; and (5) damages resulting from the concealment").

## Prompt Notice

The Purchase Agreement requires that notice of the Indemnification Matter be provided "promptly". In assessing whether notice is prompt, you may consider all of the facts and circumstances surrounding the Indemnification Matter and whether the Blu Parties were prejudiced by the timing of the notice. [The burden is on the Blu Parties to prove that they were prejudiced by the timing of the notice.]

Source:   Falcon Streel Co., Inc. v. Maryland Cas. Co., 366 A.2d 512, 514 (Del. Super. 1976) (indemnifying insurer must prove prejudice to avoid liability on indemnity claim based on contention that notice was not provided "as soon as practicable"); Avaya, Inc. v. Charter Commc'ns Holding Co., LLC, No. CVN14C-03-052JTVCCLD, 2014 WL 6675750, at *3 (Del. Super. Nov. 10, 2014) (applying New York law, whether indemnification notice under parties' agreement was "prompt" depends on the facts and circumstances and whether defendant "was prejudiced by the timing of the tender"); State Farm Mut. Auto. Ins. Co. v. Johnson, 320 A.2d 345, 347 (Del. 1974) (for an indemnifying insurer to prevail on a defense that notice did not comply with policy conditions, "the insurer has the burden of showing that it has thereby been prejudiced"); see also Pharmacia Corp. v. Motor Carrier Servs. Corp., 309 F. App'x 666, 668 (3d Cir. 2009) (where purchase agreement required party to "promptly provide written notice" and New Jersey law applied, indemnifying party to contract was likewise required to demonstrate prejudice to avoid liability).

Dated: March 24, 2021

BLANK ROME LLP

*/s/ Adam V. Orlacchio*
Adam V. Orlacchio (ID No. 5520)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Orlacchio@BlankRome.com
*Attorneys for Defendants*

DEFENDANTS 10

136366.00603/125535550v.1